UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAMONT WALKER,

                              Plaintiff,

v.                                                              09-CV-845-JTC

SUSANNA MATTINGLY, et al.,

                              Defendants.

_____


        This case has been transferred to the undersigned for all further proceedings.

Plaintiff Lamont Walker, an inmate incarcerated under the custody and care of the

Commissioner of the New York State Department of Correctional Services ("DOCS"),[1]

brought this action *pro se* pursuant to 42 U.S.C. § 1983 against certain employees (or

former employees) of the New York State Division of Parole ("DOP").  Plaintiff claims

that he is being unlawfully detained in prison beyond his release date.  Pending for the

court's determination are the parties' cross-motions for summary judgment.

        For the reasons that follow, plaintiff's motion for summary judgment is denied,

and defendant's motion for summary judgment is granted.

_____

        [1]On March 31, 2011, the New York State Legislature passed the 2011–2012 budget bill merging
several state agencies to help reduce the size of the state budget deficit.  In this legislation, signed by
Governor Andrew M. Cuomo, the Department of Correctional Services was merged with the Division of
Parole to form the Department of Corrections and Community Supervision (DOCCS).  *See People v.
Pomales*, ___N.Y.S.2d___, 2012 WL 539798, at *2 (N.Y. Sup. Ct. Feb. 17, 2012); *Earley v. Annucci*, 2011
WL 7112917, at *1 n. 4 (N.D.N.Y. Dec. 28, 2011).  Because the events relevant to this action occurred
prior to the merger, and to maintain consistency with the pleadings, the court will continue to refer to the
state's Department of Correctional Services as "DOCS."

## BACKGROUND

The court's docket reflects that plaintiff is currently housed at Orleans Correctional Facility, maintained by DOCS.  Plaintiff was originally received into custody in August 1994 to serve an indeterminate term of 10 to 20 years upon conviction of the underlying offenses of Rape, 1st degree and Robbery, 1st degree.  He was classified by the sentencing court as a "Level 3" sex offender.  *See* Item 50 (Deft. Statement of Undisputed Facts), ¶¶ 7-9; Item 54 (Mattingly Decl.), ¶¶ 4-6.

Plaintiff was released to parole supervision on June 26, 2003, and resided with his aunt, Geraldine Cox, in Monticello, New York, but was returned to DOCS' custody in January 2005 upon a plea of guilty to a parole violation.  He was re-released to parole supervision in October 2005, and resided in Niagara County with his girlfriend, Daphne Ward.  Plaintiff married Ms. Ward in May 2007, and they have two young children.  On February 28, 2008, plaintiff was again found guilty of violating the conditions of his release, and he was returned to DOCS' custody as a persistent parole violator.  He became eligible for release on July 31, 2009.  Item 50, ¶¶ 10-20; Item 54, ¶¶ 7-12.

In May 2009, plaintiff was interviewed by Lisa Hoy, the Facility Parole Officer at the Mid-State Correctional Facility where plaintiff was then housed.  During the interview, plaintiff informed Officer Hoy that he wanted to reside in Niagara County in order to be close to his wife and children.  Officer Hoy prepared a "Release Decision Notice," dated May 11, 2009, which detailed nineteen conditions of release.  *See* Item 52, pp. 11-13.  She then forwarded plaintiff's file to the Niagara Frontier Parole Office, where it was assigned to Parole Officer Susanna Mattingly.  Officer Mattingly conducted an investigation into possible Niagara County residences for plaintiff upon his release,

and reported the following results of her investigation in a July 20, 2009 memorandum

to her Bureau Chief, Philip Overfield:

1.  There is no homeless program in Niagara County which will take a sex offender.
2.  There is no shelter program in Niagara County which will take a sex offender.
3.  Requested (Mid-State) facility re-interview subject to determine if there is any proposed address and he had none.
4.  The boarding house that was used for undomiciled sex offenders in the city of Niagara Falls is no longer available due to requirements outlined by the city of Niagara Falls.
5.  Contact was made with his aunt who lives in Monticello, New York but she refused to take him stating that her grandchildren come to see her and she "cannot deny the rest of the family".
6.  There is no shelter program available for sex offenders in Albany County which is the county his aunt had lived in and the county where the subject had lived for a period of time while on Parole.
7.  Contact was made with his estranged wife and she is not interested in continuing a relationship with the subject and is expected to file for a divorce.  (It is believed that there was domestic violence involved in the relationship).
8.  Contact [was] made with his estranged in-laws and they had no housing suggestions.

The subject remains undomiciled.  It is requested that the residency condition be imposed upon the subject.

Item 54-1, pp. 2-3.

Bureau Chief Overfield concurred with Officer Mattingly's request, and the file

was forwarded for further review by the Regional Director, the Central Office Sex

Offender Management Unit, and the Board of Parole.  As a result, on July 27, 2009,

Parole Commissioner Thomas P. Grant e-mailed the following statement to the Mid-

State Correctional Facility Parole Office:

Following consideration of all factors, the reviewing Commissioner imposed two additional conditions because it is believed these additional conditions will increase the likelihood of the subject's success under supervision.

The identification of a stable residence with adults who can provide collateral monitoring and thereby help criminal justice professionals in identifying triggering behaviors is a most important factor in this case. Therefore, the following additional conditions are imposed:

1.     I will propose a residence to be approved by the Division of Parole and will assist the Division in any efforts it may make on my behalf to develop an approved residence.

2.     I will reside only in the residence approved by the Division of Parole.

Item 53, p. 15.  On July 28, 2009, upon receipt of this transmission, Officer Hoy

reviewed these additional conditions with plaintiff, and presented him with an amended

"Release Decision Notice," incorporating these additions as "Special Conditions 20 and

21," for his signature.  *See* Item 52, pp. 18-23.  Plaintiff refused to sign, and remains in

DOCS' custody.

Plaintiff filed this action on September 28, 2009, alleging that the imposition of

these two special conditions violated the clear mandate of New York Executive Law

§ 259-a(6),which requires that the DOP "shall assist inmates eligible for … parole or

conditional release … to secure employment, educational or vocational training, and

housing."  N.Y. Exec. Law § 259-a(6) (McKinney's 2009).[2]   Plaintiff claims that the

special conditions imposed by Commissioner Grant, as recommended by Officer

Mattingly and reviewed by Officer Hoy, have impermissibly shifted the burden of

―――――――――――――――

[2]This section of the New York Executive Law was repealed effective March 31, 2011 (upon the merger of DOCS and DOP to form DOCCS) and was replaced by new Section 201(5) of the New York Correction Law, which provides:

The department shall assist inmates eligible for community supervision and inmates who are on community supervision to secure employment, educational or vocational training, and housing.

N.Y. Correct. Law § 201(5).

securing an acceptable residence from the DOP to plaintiff.  Item 1, p. 6.  He also

claims that he has submitted alternative residency proposals to Mattingly and Hoy, but

they have rejected his proposals without explanation (*id.* at 7, 8), and that he

complained to Mattingly's supervisor, Senior Parole Officer James Gibbons, about

Mattingly's refusal to assist plaintiff in finding acceptable housing, but no action was

taken.  *Id.* at 6, 10.  Plaintiff alleges that the conduct of defendants Grant, Mattingly,

Hoy and Gibbons has resulted in plaintiff's "false imprisonment," which (as explained at

further length below) the court broadly construes as a claim for deprivation of liberty

without due process.  *Id.* at 11; *see also* Item 46, pp. 7-11.  Plaintiff seeks money

damages to compensate for the time he has spent in prison beyond his release date, as

well as punitive damages based on defendants' "ill will" and "blatant disregard for the

mandate" of the state Executive Law.  Item 1, pp. 8, 11.

On October 29, 2009, an order was entered granting plaintiff's request to

proceed *in forma pauperis* in this action, and directing service of the summons and

complaint on the defendants.  Item 5.  In that order, United States District Judge

Charles J. Siragusa noted:

> [P]laintiff's complaint appears to be one that may be at the oft-times
> confusing crossing of the Supreme Court's holdings in *Heck v. Humphrey*,
> 512 U.S. 477 (1994), and *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and
> raises questions that the Court should not resolve at this stage in the
> litigation – *i.e.*, *sua sponte* screening of a *pro se* and prisoner complaint
> under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

Item 5, pp.3-4.  Judge Siragusa allowed plaintiff's claims to proceed, and directed

defendants "to address in their responsive pleadings, if relevant, the issues presented

by *Heck* and *Wilkinson* raised herein."  *Id.* at 5.

Meanwhile, on October 28, 2009, plaintiff submitted a motion for a temporary restraining order and preliminary injunction seeking his immediate release from DOCS' custody. *See* Item 4. Upon dispositive referral, United States Magistrate Judge H. Kenneth Schroeder, Jr. recommended that the district court deny plaintiff's request for injunctive relief, finding that plaintiff's papers failed to either (1) demonstrate a likelihood of success on the merits and irreparable injury, or (2) raise serious questions going to the merits with the balance of hardship tipping in plaintiff's favor. *See* Item 9. This report and recommendation was adopted by the district court (Item 18).

Following the parties' exchange of discovery materials, plaintiff moved for summary judgment granting the relief sought in the complaint on the ground that there is no genuine issue of material fact for trial with respect to his claim that defendants have deprived him of his liberty without due process by violating the statutory mandate to assist him in securing acceptable housing. *See* Item 46. Defendants responded by cross-motion for summary judgment asserting that no reasonable jury could find in plaintiff's favor on his due process claim. Defendants also contend that they are immune from liability under the doctrines of absolute and/or qualified immunity, and that plaintiff's claim for damages is barred under the principles announced by the Supreme Court in *Heck* and *Wilkinson*. Finally, defendants assert that the claims against Gibbons and Hoy must be dismissed for lack of personal involvement in the alleged constitutional violation. *See* Item 55.

For the reasons that follow, plaintiff's motion for summary judgment is denied, and defendants' motion is granted, dismissing the complaint in its entirety.

**<u>DISCUSSION</u>**

I.     **Summary Judgment**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although the language of this

Rule has been amended in recent years, the well-settled standards for considering a

motion for summary judgment remain unchanged.  *See, e.g.,  Faulkner v. Arista*

*Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011); Fed. R. Civ. P. 56,

Committee's notes to 2010 amendments.  Under those standards, the party seeking

summary judgment bears the initial burden of establishing that no genuine issue of

material fact exists.  *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F.

Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F.App'x 387 (2d Cir. 2011).  A "genuine

issue" exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is

"material" if it "might affect the outcome of the suit under the governing law …."  *Id.*

Once the court determines that the moving party has met its burden, the burden

shifts to the opposing party to "come forward with specific facts showing that there is a

genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986) (internal quotation marks and citation omitted).  The nonmoving party

may not rest upon mere conclusory allegations or denials, but must set forth "concrete

particulars showing that a trial is needed …."  *R.G. Group, Inc. v. Horn & Hardart Co.*,

751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted), *quoted in*

*Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011).  In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The court recognizes its duty to "extend extra consideration to *pro se* plaintiffs," and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998), *aff'd*, ___F.App'x___, 2008 WL 5083122 (2d Cir. 2008); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted to raise the strongest arguments that they suggest).  "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Cole v. Artuz*, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases), *quoted in Bennett*, 2006 WL 2794421, at*3.[3]

As outlined above, defendants contend that they are entitled to summary judgment dismissing the complaint because plaintiff has failed to establish a due

---

[3]The court is likewise cognizant of the requirement that *pro se* litigants be given actual notice, provided in an accessible manner either by the movant or the district court itself, of the consequences of failing to comply with the requirements of Rule 56.  *Irby v. New York City Transit Auth.*, 262 F.3d 412, 413-14 (2d Cir. 2001).  This requirement has been satisfied here, as reflected in the defendants' Notice of Cross-Motion for Summary Judgment (Item 49), and because "the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment."  *McPherson v. Coombe*, 174 F.3d 276, 281 (2d Cir. 1999).

process violation.  Defendants have also raised several alternative grounds, including

the defenses of absolute and qualified immunity; the doctrines announced in *Heck v.*

*Humphrey* and *Wilkinson v. Dotson*; and lack of personal involvement on the part of

defendants Gibbons and Hoy.

The Supreme Court has counseled that, in adjudicating a summary judgment

motion in an action brought under section 1983 in which the affirmative defense of

qualified immunity is raised – which ordinarily requires determination of whether the

constitutional right asserted by a plaintiff is "clearly established" at the time the

defendant acted – the preferred approach is to determine first "whether the plaintiff has

asserted a violation of a constitutional right at all."  *Siegert v. Gilley*, 500 U.S. 226, 232

(1991).  This approach makes ultimate sense here, since determination of this "purely

legal question" could obviate the need to address not only the immunity issue, but any

of the alternative grounds raised by defendants.  Therefore, the court turns its attention

to the preliminary, and potentially dispositive, issue as to whether plaintiff has

adequately asserted a constitutional claim cognizable in an action for damages under

42 U.S.C. § 1983.

## II.      42 U.S.C. § 1983

Section 1983 provides in relevant part:

### Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of the United States or
other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be

> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress ….

42 U.S.C. § 1983. "In order to maintain a section 1983 action, two essential elements

must be present: (1) the conduct complained of must have been committed by a person

acting under color of state law; and (2) the conduct complained of must have deprived a

person of rights, privileges, or immunities secured by the Constitution or laws of the

United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994); *see also Kasiem v.*

*Guzman*, 2011 WL 4352387, at *3 (W.D.N.Y. Sept. 16, 2011).

As discussed above, plaintiff has alleged that the imposition of Special

Conditions 20 and 21 requiring him to affirmatively propose suitable residences for

Parole Board approval prior to his release violates the state statutory requirement that

the Parole Board "shall" assist inmates to secure housing, with the result that he is

being unlawfully held in DOCS' custody beyond his eligible release date. Broadly

construed in plaintiff's favor to satisfy section 1983's the pleading requirements, this

allegation amounts to a claim for deprivation of liberty secured by the Due Process

Clause of the Fourteenth Amendment to the United States Constitution.

The Due Process Clause contains both a substantive component and a

procedural component. *Zinernon v. Burch*, 494 U.S. 113, 125 (1990). The substantive

component "bars certain arbitrary, wrongful government actions regardless of the

fairness of the procedures used to implement them …," while the procedural

component bars "the deprivation by state action of a constitutionally protected interest

in life, liberty, or property … without due process of law." *Id.* (internal quotations marks

and citations omitted).

"To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law." *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). There is no dispute in this case that the defendants acted under color of state law. "What remains is a two-pronged inquiry: (1) whether the plaintiff had a protected liberty interest … and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law." *Id.* at 351-32 (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989)).

Plaintiff's due process claim fails at the first prong of this inquiry. The Second Circuit has consistently held that, under New York's parole scheme, prison inmates "have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001); *see also McAllister v. New York State Div. of Parole*, 432 F.App'x 32, 32-33 (2d. Cir. 2011) (rejecting due process challenge to denial of parole to violent felony offender); *Boothe v. Hammock*, 605 F.2d 661, 664-65 (2d Cir. 1979) (New York state's statutory scheme for determining parole release "do not create interests entitled to due process protection, and are matters for consideration by the state courts."). The courts have also consistently held that a parolee has no constitutionally protected interest in being free from special conditions of release. *Boddie v. Chung*, 2011 WL 1697965, at *2 (E.D.N.Y. May 4, 2011) (rejecting section 1983 challenge to special conditions); *Cooper v. Dennison*, 2011 WL 1118685, at * 11 (W.D.N.Y. Mar. 24, 2011) (quoting *Pena v.*

*Travis*, 2002 WL 31886175, at *13 (S.D.N.Y. Dec. 27, 2002) ("Because the imposition

of special conditions is left to the discretion of the Board of Parole and parole officers,

plaintiff does not have a protected liberty interest in being free from special

conditions.")); *see also* 9 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R."), tit. 9, § 8003.3

("A special condition may be imposed upon a releasee either prior or subsequent to

release.  The releasee shall be provided with a written copy of each special condition

imposed.  Each special condition may be imposed by a member or members of the

Board of Parole, an authorized representative of the Division of Parole, or a parole

officer.").

        In addition, the Parole Board's discretionary imposition of special conditions is

"not subject to judicial review in the absence of a showing that the board or its agents

acted in an arbitrary and capricious manner.  Review of conditions of parole are

generally matters for state courts."  *Pena*, 2002 WL 31886175, at *9; *see also Robinson*

*v. Pagan*, 2006 WL 3626930, at *1 n. 2 (S.D.N.Y. Dec. 12, 2006).  Indeed, in reviewing

Division of Parole determinations pursuant to N.Y.C.P.L.R Article 78, New York courts

have found it to be "within the discretion of the Division to impose the special condition

of securing approved housing, even though the condition must be satisfied before [the

petitioner's] request of conditional release can be granted."  *Monroe v. Travis*, 721

N.Y.S.2d 377, 280 A.D.2d 675, 676 (App. Div.), *lv. denied*, 96 N.Y.2d 714 (2001); *see*

*also Hyman v. New York State Div. of Parole*, 800 N.Y.S.2d 347, 2004 WL 3142197, at

*3 (N.Y. Sup. Ct. Nov. 15, 2004) (Parole Division's imposition of special residency

conditions requiring convicted sex offender to locate suitable residence before his

release was rationally related to past conduct, and was neither arbitrary nor capricious, nor contrary to law).

Even closer to the mark, the New York State Appellate Division has explicitly rejected the argument that the Parole Board's imposition of special conditions requiring the parolee to affirmatively propose suitable residences as a condition precedent to release violates the mandate of Executive Law § 259-a(6).  For example, in *Matter of Lynch v. West*, 805 N.Y.S.2d 728 (App. Div. 2005), the inmate was a violent sex offender serving a 12½ to 25 year term for convictions on charges of rape, sexual abuse and criminal possession of a weapon.  In setting a conditional release date, the Board of Parole imposed a special condition (similar to the special conditions at issue in this case) requiring that the inmate arrange in advance for an approved residence.  The court found this to be "a valid condition precedent to parole release" and that, "[g]iven the nature of his past offenses and his institutional history, petitioner has not shown that the condition is unreasonable or unlawful."  *Id.* at 729.  The court also found that section 259-a(6) of the Executive Law – the same provision containing the same "mandatory" language relied upon by plaintiff in this case as the linchpin of his due process claim – did not "impose any duty upon the Division of Parole to assist petitioner in obtaining a qualifying residence."  *Id.*; *see also Breeden v. Donnelli*, 808 N.Y.S.2d 839, 840-41 (App. Div. 2006) (Parole Board has no obligation to assist inmate in locating and securing appropriate housing; citing N.Y. Exec. Law § 259–a(6)-(8); 9 N.Y.C.R.R. § 8000.1(a)(5)).

Plaintiff cites *People ex rel. O'Connor v. Berbary*, 756 N.Y.S.2d 714 (Sup. Ct. 2002), in which the court ordered the immediate release of a sex offender who was held

-13-

in custody beyond the maximum expiration date of his prison sentence because he had not proposed a residence that had been approved by the Parole Board.  The court found that Executive Law § 259–a(6) imposed "an affirmative duty to provide meaningful, pro-active assistance to Petitioner in his effort to obtain housing and/or employment which comports with the terms and conditions of his post-release supervision," but the Parole Board had "done virtually nothing to assist Petitioner with obtaining acceptable housing or living arrangements following their rejection of the various proposals he advanced."  *Id.* at 716.

By contrast, in the present case plaintiff has not been held in custody beyond the maximum expiration date of his sentence (June 30, 2013; *see* Item 54-3, p. 4), and the record reflects that Officer Mattingly conducted a thorough investigation of the addresses proposed by plaintiff, as well as other alternative suitable housing options for Level 3 sex offenders in Niagara, Schenectady, Albany, and Sullivan Counties.  She contacted shelters, boarding houses, and other state-funded housing, and reviewed plaintiff's prison telephone log, list of visitors, and package registrants in an attempt to find a friend or family member that would be willing to provide a residence.  *See* Item 54.  Upon the approach of plaintiff's release date, and in the absence of approvable housing or any suitable proposals from plaintiff, Officer Mattingly recommended that the Parole Board consider  imposing special conditions precedent to release requiring plaintiff to affirmatively assist the Division in its efforts to secure an approved residence. In light of this undisputed record, and considering the holdings in *Matter of Lynch* and other authorities cited, the court finds the result in *People ex rel. O'Connor*

distinguishable on its facts, and not controlling.  *Cf. Boss v. New York State Div. of Parole*, 932 N.Y.S.2d 387, 388 (App. Div. 2011) (rejecting inmate's contention that Parole Board  violated duty to assist under Exec. Law § 259–a (6), based on record demonstrating Board's  contact with several agencies in county of conviction).

Based on this analysis, the court finds that plaintiff has failed to establish a constitutionally protected interest in being free from the special conditions of release imposed by the Parole Board in this case.  Accordingly, no reasonable jury could find in plaintiff's favor on his claim that defendants' conduct has deprived him of his personal liberty without procedural due process.

Construed to allege a substantive due process claim, plaintiff's complaint fares no better.  To establish a violation of substantive due process, plaintiff must demonstrate that the action taken by the Parole Board was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998), *quoted in Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005).  To "shock the conscience," official conduct must be so "brutal and offensive that it [does] not comport with traditional ideas of fair play and decency."  *Id.* at 847, *quoted in Robles v. Dennison*, 449 F.App'x 51, 55 (2d Cir. 2011).

As demonstrated by the discussion above, the Parole Board "made decisions it was permitted to make under New York law," *Robles*,  449 F.App'x at 55, and there is nothing about the conduct alleged on the part of the Parole Board officers involved in those decisions that could be found so egregious, outrageous, or brutal as to offend contemporary notions of fairness.  To the contrary, the undisputed facts presented on

the summary judgment record reflect that the Parole Board's discretionary determinations regarding the conditions to be placed on plaintiff's parole release were made upon full review of his file in a manner consistent with the Board's obligation to maximize the likelihood of success under parole supervision by assuring compliance with appropriate local and state residency standards for Level 3 sex offenders.

Based on the foregoing analysis, no reasonable jury could find in favor of plaintiff on his claim that the imposition of Special Conditions 20 and 21 resulted in "false imprisonment" depriving him of a liberty interest secured by the Due Process Clause. Accordingly, defendants are entitled to summary judgment as a matter of law dismissing plaintiff's complaint, and the court need not consider the alternative grounds raised by defendants' motion.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (Item 46) is denied, defendants' cross-motion for summary judgment (Item 49) is granted, and the complaint is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment in favor of defendant.

The court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.

_____
\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   April 4, 2012
p:\pending\2009\09-845.mar29.2012